# Exhibit 5



21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Elizabeth McNamara**

January 27, 2016

**Via Email**

Kyle M. Medley, Esq.
Hinshaw & Culbertson LLP
800 Third Avenue
New York, NY 10022

Re: *The Girls* by Emma Cline (the "Work")

Dear Mr. Medley:

I write in response to the letter your client, Chaz Reetz-Laiolo, sent to Ms. Cline on January 15, 2016 concerning claims arising out of the unpublished work *The Girls*.

Your client makes serious accusations about "infringement" of his written work, premised on fantastical claims involving years of supposed spying by Ms. Cline via remote access to his computer all in an effort to obtain, and appropriate, Mr. Reetz-Laiolo's unpublished work. But that is not all: implicit in his claims is a contention that Mr. Reetz-Laiolo even somehow helped to conceive of *The Girls* and that his literary input helped to "secure" Ms. Cline's publishing deals. We have carefully reviewed each of your client's contentions and have found nothing to support them. The truth is far more pedestrian and lies in either standard-issue accusations that arise in the demise of many romantic relationships, or in the basic give and take of their subsequent friendship when Mr. Reetz-Laiolo continued to seek editorial input from Ms. Cline. Far from infringing any of his work, the evidence actually establishes that it is only Mr. Reetz-Laiolo who has published (without attribution) work created by Ms. Cline. Ms. Cline has not published any of your client's protected work; nor will she.

**The Evolution of *The Girls***

For years, long before she met and became romantically involved with Mr. Reetz-Laiolo, Ms. Cline was fascinated by the Manson story and commune living in 1960s Northern California and read everything she could on the topic. Informed in part by her interest, during her relationship with Mr. Reetz-Laiolo, Ms. Cline was working on a book about a multi-generational family on a commune. Mr. Reetz-Laiolo played no role in the creation or writing of that work,

DWT 28580698v2 0056070-000004

Anchorage | New York | Seattle
Bellevue | Portland | Shanghai
Los Angeles | San Francisco | Washington, D.C.

www.dwt.com

Kyle M. Medley
January 27, 2016
Page 2

which Ms. Cline ultimately set aside in order to begin writing the work that has become *The Girls*. Nor has he played any role in the creation or writing of *The Girls*.

One small point in your client's letter is correct: in September 2011 Ms. Cline was reading *Helter Skelter* and she and Mr. Reetz-Laiolo did have a conversation about a possible Manson film script. But, any sense of accuracy ends there. Mr. Reetz-Laiolo omits the critical facts that underscore that this was nothing more than a brief conversation about an idea that was quickly aborted. The idea went nowhere because that same evening they Googled "Manson movies" only to learn that there was a movie that had already been written called "Manson Girls," directed by Susana Lo. Beyond this brief exchange, there were no notes, plans or discussions about this kernel of an idea. This is all documented by later computer chat exchanges, which Mr. Reetz-Laiolo attempts to misconstrue by selectively quoting from them. In full, the exchanges confirm that they found a "parallel script" and that the Manson "basket" was "gone" because, as Mr. Reetz-Laiolo tellingly notes: "bitch stole from us our very thoughts."

Nor is there any basis for Mr. Reetz-Laiolo's contention that his work played any role in "securing [Ms. Cline's] recent literary contract with Penguin Random House and the motion picture option rights" for the Work. Please be assured that those rights were sold on the strength of Ms. Cline's ideas and work, not a handful of snippets from Mr. Reetz-Laiolo's published work that Ms. Cline understood she had his permission to use. Indeed, when Mr. Reetz-Laiolo expressed belated concern with the use of such snippets, they were promptly deleted from the draft Work and their removal had not the slightest impact on the quality of the Work. (To assuage any remaining concern about the draft of the Work used to sell such rights, we attach as Exhibit A the cover letter and the draft of the Work that was sent to Penguin Random House. There was not separate cover letter to Scott Rudin Productions, but they reviewed the same draft of the manuscript.)

**The Alleged Infringement**

Mr. Reetz-Laiolo's claim of infringement turns on his "belief" that Ms. Cline obtained access to his written work "via spyware that [she] installed on [his] personal laptop." Nothing could be further from the truth. Back in 2010, Ms. Cline installed a keystroke application on *her own personal* computer at a time when she suspected Mr. Reetz-Laiolo of infidelity. As suspected, she learned that Mr. Reetz-Laiolo was having affairs with Kristin Kiesel and other women. When she confronted him about this, Ms. Cline revealed that she learned this by going into his email (since he often used her computer). It was only during this period and only for this personal reason that Ms. Cline used the "spyware." When she sold that computer to Mr. Reetz-Laiolo three years later, she deleted all her content from the computer but none of the applications she had installed. Since she had long forgotten this brief use of the keystroke program, she did not remember that that application was on the computer. More importantly, in the intervening years

Kyle M. Medley
January 27, 2016
Page 3

she had no ability to, nor did she, access that computer remotely. If that had in fact occurred, it could be verified and, notably, Mr. Reetz-Laiolo provides no evidence – except for his unfounded assumption – that she ever accessed that computer after she sold it to him.

In the intervening years, the only way that Ms. Cline has had any access to Mr. Reetz-Laiolo's unpublished work is when he has sent it to her for her help in editing his work. He clearly valued her editing and contributions to his work since between 2010 and 2015, Mr. Reetz-Laiolo sent at least 25 pieces of work to her with requests to edit them or to send them to editors that she knew. A case in point is his work "Animals" that was published in Ecotone in 2013. As she can readily document, Ms. Cline extensively edited that work, incorporating her own sentences and passages. Or, as Mr. Reetz-Laiolo instructed her, "add words to make it more interesting" and "there needs to be a little thing inserted by yousssssssss".

Ms. Cline did not object to his use of her contributions without attribution. And it was in the same vein that she asked him if she might use in her Work certain facts from his experience of working as a home aide that he published in *Take Care*. As noted above, when he later raised a concern with that, she removed any such language whether she believed that it actually originated with him or not. In his most recent letter, Mr. Reetz-Laiolo adds to this list of supposed takings with the language included on Exhibit A to his letter. We have carefully reviewed this list – which contains such common and unprotectable phrases as "heavy rear," "beached whale," "floor messed," or "bundled in the passenger" – and compared the identified language from a draft of *The Girls* with any material that Mr. Reetz-Laiolo sent to Ms. Cline. Except for a handful of snippets that had already been removed from her Work, we are unable to find any comparable language in Mr. Reetz-Laiolo's work for the vast majority of items included on Exhibit A. And we note that he does not identify where this language supposedly appears in his work. If he wishes to provide further documentation, we will consider this issue further.

Finally, Mr. Reetz-Laiolo tries to find support for his claims in the fact that Ms. Cline ran her work through an online plagiarism application. This is a very common practice of most any author, particularly when the subjects of a book involve or are inspired by a topic that has been ubiquitously written about for decades. Her good faith is evidenced by her desire to insure that there was no inadvertent taking of language from any of the hundreds of books, articles, novels on the Manson family, the Zodiac murders, the Chosen Family and, in general, on commune-living in 1960s California that she had read over the years. As she wrote in chat messages to Mr. Reetz-Laiolo, the results were "hilarious" and uncovered no plagiarism.

Kyle M. Medley
January 27, 2016
Page 4


In short, there is nothing to support Mr. Reetz-Laiolo's claims. Ms. Cline has spent significant time – and money – reviewing and responding to these unfounded charges. She now wants closure concerning this issue. To that end, I will give you a call this week to see if we can find a way to determine where your client's concerns lie and whether we can amicably resolve them. In the interim, this letter is not a full statement of the relevant facts or defenses to these claims, all of which are expressly reserved.


Sincerely,

*Elizabeth McN*

Elizabeth A. McNamara


cc:    Emma Cline
       Carolyn Foley, Esq.