Thomas R. Burke (State Bar No. 141930)
Joy G. Kim (State Bar. No. 294841)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA  94111
Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599
Email: thomasburke@dwt.com
          joykim@dwt.com

Elizabeth A. McNamara (*pro hac vice*)
Abigail B. Everdell (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:  (212) 489-8230
Facsimile:  (212) 489-8340
Email:  lizmcnamara@dwt.com
          abigaileverdell@dwt.com

Michael A. Vatis (*pro hac vice*)
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 506-3927
Facsimile:  (212) 506-3950
Email:  mvatis@steptoe.com

Attorneys for Defendants Emma Cline
and Penguin Random House LLC

DAVIS WRIGHT TREMAINE LLP

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAZ REETZ-LAIOLO, KARI BERNARD, and KRISTIN KIESEL,<br><br>                              Plaintiffs,<br><br>          v.<br><br>EMMA CLINE and PENGUIN RANDOM HOUSE LLC,<br><br>                              Defendants. | Case No. 3:17-cv-06867-WHO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Date:          April 11, 2018<br>Time:         2:00 P.M.<br>Department:  Hon. William H. Orrick<br>Courtroom:  2, 17th Floor |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

    I.    REETZ-LAIOLO'S COPYRIGHT CLAIMS SHOULD BE DISMISSED ............. 2

           A.    Reetz-Laiolo is Required to Plausibly Allege Substantial Similarity of Protected Expression, and Because He Cannot, His Claims Must Be Dismissed ................................................................................................. 2

           B.    *The Girls* and *All Sea* Are Not Substantially Similar .................................... 4

    II.    REETZ-LAIOLO'S CONVERSION AND CIVIL THEFT CLAIMS FAIL ........... 7

    III.    PLAINTIFFS HAVE NOT STATED A CLAIM UNDER THE SCA .................... 7

           A.    Plaintiffs Have Not Alleged that Their Emails Were in "Electronic Storage" ....................................................................................................... 7

           B.    Plaintiffs Are Not Entitled to Statutory Damages ....................................... 11

    IV.    PLAINTIFFS' WIRETAP ACT CLAIM FAILS BECAUSE THEY HAVE NOT ALLEGED INTERCEPTION OF COMMUNICATIONS IN TRANSMISSION ........................................................................................ 12

    V.    PLAINTIFFS FAIL TO STATE A CFAA CLAIM ............................................... 14

    VI.    PLAINTIFFS' CIPA CLAIM FAILS ................................................................... 16

    VII.    PLAINTIFFS CALIFORNIA COMPUTER CRIME LAW FAILS ...................... 18

    VIII.    PLAINTIFFS' CALIFORNIA CONSTITUTION AND INTRUSION UPON SECLUSION CLAIMS FAIL ................................................................ 18

    IX.    REETZ-lAIOLO FAILS TO STATE A TRESPASS TO CHATTELS CLAIM ............................................................................................................. 19

    X.    REETZ-LAIOLO's EMOTIONAL DISTRESS CLAIM FAILS BECAUSE HE DOES NOT ALLEGE INTENT, RECKLESSNESS, OR EMOTIONAL DISTRESS ............................................................................ 20

CONCLUSION ........................................................................................................................... 21

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguiar v. MySpace LLC*,
   2017 WL 1856229 (C.D. Cal. May 5, 2017)..............................................................11

*Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*,
   793 F.3d 822 (8th Cir. 2015).....................................................................................10

*Arrington v. Colortyme, Inc.*,
   972 F. Supp. 2d 733 (W.D. Pa. 2013) .......................................................................13

*Bailey v. Bailey*,
   No. 07-CV-11672, 2008 WL 324156 (E.D. Mich. Feb. 6, 2008) ...............................9

*Band Pro Film & Digital, Inc. v. ARRI, Inc.*,
   No. 12-cv-03226-CJC (AN), 2012 WL 12888099 (C.D. Cal. Oct. 10, 2012) ...........10

*Basile v. Warner Bros. Entm't Inc.*,
   678 F. App'x 604 (9th Cir. 2017)................................................................................4

*Betty, Inc. v. PepsiCo, Inc.*,
   22017 WL 4311037 (S.D.N.Y. Sept. 26, 2017) ...........................................................4

*Brahmana v. Lembo*,
   No. C-09-00106 RMW, 2009 WL 1424438 (N.D. Cal. May 20, 2009) .....................12

*Bunnell v. Motion Picture Ass'n of Am.*,
   567 F. Supp. 2d 1148 (C.D. Cal. 2007).....................................................................13

*Cabell v. Zorro Prods. Inc.*,
   No. 5:15-CV-00771-EJD, 2017 WL 2335597 (N.D. Cal. May 30, 2017)....................4

*Campbell v. Facebook, Inc.*,
   77 F. Supp. 3d (N.D. Cal. 2014) .......................................................................14, 17

*Capcom Co. v. MKR Grp., Inc.*,
   No. C 08-0904 RS, 2008 WL 4661479 (N.D. Cal. Oct. 20, 2008) ..............................3

*Chavan v. Cohen*,
   No. C13-01823 RSM, 2015 WL 4077323 (W.D. Wash. July 6, 2015) .....................11

*Christensen v. Superior Court*,
   54 Cal. 3d 868 (1991)................................................................................................20

*Crispin v. Christian Audigier, Inc.*,
   717 F. Supp. 2d 965 (C.D. Cal. 2010)..................................................................8, 10

DAVIS WRIGHT TREMAINE LLP

*Doe v. Chao,*
    540 U.S. 614 (2004) ...........................................................................................................11

*Doe v. City & County of San Francisco,*
    No. C10-04700 TEH, 2012 WL 2132398 (N.D. Cal. June 12, 2012)...........................................9

*Exec. Sec. Mgmt., Inc. v. Dahl,*
    830 F. Supp. 2d 883 (C.D. Cal. 2011)....................................................................................13

*Fodor v. Los Angeles Unified Sch. Dist.,*
    No. CV 12-8090 DMG (CWX), 2014 WL 12235424 (C.D. Cal. June 3, 2014) .........................3

*Funky Films v. Time Warner Entm't Co,*
    462 F.2d 1072 (9th Cir. 2006)..................................................................................................4

*Gallagher v. United States,*
    No. 17-cv-00586-MEJ, 2017 WL 4390172 (N.D. Cal. Oct. 3, 2017).........................................11

*Gaos v. Google Inc.,*
    No. 5:10-cv-4809 EJD, 2012 WL 1094646 (N.D. Cal. Mar. 29, 2012)....................................11

*Gladstone v. Hillel,*
    203 Cal. App. 3d 977, 250 Cal. Rptr. 372 (Ct. App. 1988) ........................................................7

*Global Policy Partners, LLC v. Yessin,*
    686 F. Supp. 2d 632 (E.D. Va. 2009)....................................................................................13

*In re Google Inc.,*
    No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...............................17

*Grisham v. Philip Morris USA, Inc.,*
    151 P.3d 1151 (Cal. 2007) ....................................................................................................17

*Hahn v. Rothman,*
    No. 09-cv-0249 ODW (FFM), 2010 WL 11507395 (C.D. Cal. Oct. 8, 2010).....................9, 11

*In re Hawaiian Airlines Inc.,*
    355 B.R. 225 (D. Haw. 2006) ...............................................................................................11

*Hernandez v. Path, Inc.,*
    No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) .................................12

*Heusey v. Emmerich,*
    692 F. App'x 928 (9th Cir. 2017)............................................................................................4

*Identity Arts v. Best Buy Enter. Servs. Inc.,*
    No. C 05-4656 PJH, 2007 WL 1149155 (N.D. Cal. Apr. 18, 2007), *aff'd sub*
    *nom.* 320 F. App'x 772 (9th Cir. 2009)..............................................................................4, 6

*Inland Mediation Bd. v. City of Pomona,*
    158 F. Supp. 2d 1120 (C.D. Cal. 2001)..................................................................................20

DAVIS WRIGHT TREMAINE LLP

*Intel Corp. v. Hamidi,*
    30 Cal. 4th 1342, 71 P.3d 296 (2003) ...............................................................19, 20

*In re iPhone Application Litig.*
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................................19

*Konop v. Hawaiian Airlines, Inc.,*
    302 F.3d 868 (9th Cir. 2002).............................................................................12, 13

*Lieberman v. KCOP Television, Inc.,*
    110 Cal. App. 4th 156 (Cal. Ct. App. 2003) ..........................................................17

*Matera v. Google Inc.,*
    No. 15-cv-04062-LHK, 2016 WL 5339806(N.D. Cal. Sept. 23, 2016)....................11

*Metcalf v. Bochco,*
    294 F.3d 1069 (9th Cir. 2002)...............................................................................5, 6

*Miller v. Nat'l Broad. Co.,*
    187 Cal. App. 3d 1463 (Cal. Ct. App. 1956)...........................................................20

*Motown Record Corp. v. George A. Hormel & Co.,*
    657 F. Supp. 1236 (C.D. Cal. 1987).........................................................................7

*Narell v. Freeman,*
    872 F.2d 907 (9th Cir. 1989)....................................................................................3

*NovelPoster v. Javitch Canfield,*
    140 F. Supp. 3d 954 (N.D. Cal. 2014) ....................................................................16

*NovelPoster v. Javitch Canfield Grp.*
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ................................................13, 15, 16, 18

*Oddo v. Ries,*
    743 F.2d 630 (9th Cir. 1984)....................................................................................7

*People v. Griffitt,*
    No. E049004, 2010 WL 5006815 (Cal. Ct. App. Dec. 9, 2010)..............................17

*People v. Nakai,*
    183 Cal. App. 4th 499 (Cal. Ct. App. 2010) ...........................................................17

*Pickern v. Pier 1 Imports (US), Inc.,*
    457 F. 3d 963 (9th Cir. 2006)..................................................................................14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
    214 F. Supp. 3d 808 (N.D. Cal. 2016) ....................................................................17

*Quon v. Arch Wireless Operating Co., Inc.,*
    529 F.3d 892 (9th Cir. 2008), *rev'd sub nom. City of Ontario, Cal. v. Quon,*
    560 U.S. 746 (2010) ..................................................................................................9

DAVIS WRIGHT TREMAINE LLP

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
 668 F.3d 1148 (9th Cir. 2012) ................................................................................3

*Rentmeester v. Nike, Inc.*,
 883 F.3d 1111 (9th Cir. 2018) ........................................................................2, 3, 5

*Schneider v. Cal. Dep't of Corrections*,
 151 F. 3d 1194 (9th Cir. 1998) ..........................................................................7, 14

*Shaw v. Lindheim*,
 919 F.2d 1353 (9th Cir. 1990) ...............................................................................3

*Shefts v. Petrakis*,
 No. 10-cv-1104, 2012 WL 4049484 (C.D. Ill. Sept. 13, 2012) ..........................12, 13

*Silas v. Home Box Office, Inc.*,
 201 F. Supp. 3d 1158 (C.D. Cal. 2016), *aff'd*, No. 16-56215, 2018 WL 1018332
 (9th Cir. Feb. 22, 2018) .........................................................................................5

*Theofel v. Farey-Jones*,
 359 F.3d 1066 (9th Cir. 2004) ..........................................................8, 9, 10, 12

*Underhill v. Kornblum*,
 No. 16-cv-1598-AJB-WVG, 2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ..............10

*United States v. Barrington*,
 648 F.3d 1178 (11th Cir. 2011) .............................................................................12

*United States v. Ritchie*,
 342 F.3d 903 (9th Cir. 2003) ................................................................................15

*United States v. Ropp*,
 347 F. Supp. 2d 831 (C.D. Cal. 2004) ...................................................................12

*United States v. Steiger*,
 318 F.3d 1039 (11th Cir. 2003) .............................................................................13

*United States v. Weaver*,
 636 F. Supp. 2d 769 (C.D. Ill. 2009) ...................................................................8, 9

*Van Alstyne v. Elec. Scriptorium, Ltd.*,
 560 F.3d 199 (4th Cir. 2009) ................................................................................11

*Vista Mktg., LLC v. Burkett*,
 812 F.3d 954 (11th Cir. 2016) ...............................................................................11

*Walker v. Time Life Films, Inc.*,
 784 F.2d 44 (2d Cir. 1986) ......................................................................................6

*White v. Twentieth Century Fox Corp.*,
 572 F. App'x 475 (9th Cir. 2014) ...........................................................................4

DAVIS WRIGHT TREMAINE LLP

*Wild v. NBC Universal*,
  513 F. App'x 640 (9th Cir. 2013)...............................................................................4

*Williams v. Crichton*,
  84 F.3d 581 (2d Cir. 1996).........................................................................................4

*Winn v. Lassen Canyon Nursery Inc.*,
  No. 2:10-CV-1030-JAM-CMK, 2010 WL 4688798 (E.D. Cal. Nov. 10, 2010) ..................7, 14

*Wyatt Tech. Corp. v. Smithson*,
  345 F. App'x 236 (9th Cir. 2009)...............................................................................11

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......................................................................14, 18

*Zella v. E.W. Scripps Co.*,
  529 F. Supp. 2d 1124 (C.D. Cal. 2007)......................................................................6

**Statutes**

California Computer Crime Law ("CCCL"), Cal. Penal Code § 502 .................................18

California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.* ..................16, 17

Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.* ................14, 16, 18

Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.* ........................................12, 13, 14, 16

Privacy Act ........................................................................................................11

Stored Communications Act ("SCA"), 18 U.S.C. §§ 2510(17), 2701 *et seq.*..................... *passim*

**Rules**

Federal Rules of Civil Procedure
  8(a)(2)...............................................................................................................14
  12(b)(6)..........................................................................................................1, 4, 7

DAVIS WRIGHT TREMAINE LLP

1

2      Defendants Emma Cline and Penguin Random House LLC submit this reply memorandum

3  in support of their motion for an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing all claims

4  brought against them by Chaz Reetz-Laiolo, Kristin Kiesel, and Kari Bernard.

5                          **<u>INTRODUCTION</u>**

6      Plaintiffs in this action have spent over a year attempting to extract a financial windfall

7  from Defendants by threatening ever-escalating legal claims – even going so far as to threaten to

8  publicize Emma Cline's most intimate diaries, photos and sexual details.  Yet their resulting

9  complaint, filed when Defendants chose public adjudication over private extortion, failed to satisfy

10 the pleading requirements for even one of its numerous counts.  And worse, even after amending

11 their complaint in light of Defendants' initial motion to dismiss, Plaintiffs still fail to state

12 actionable claims.  The simple truth is that Plaintiffs' claims are ill-conceived, long-stale, and

13 reflect the culmination of a years-long effort by Reetz-Laiolo to harass and undermine his ex-

14 girlfriend Cline, and to extort money from her "deep pocketed" publisher Random House.

15     Perhaps most striking is Reetz-Laiolo's desperate attempt to keep alive his fantasy that

16 Cline appropriated his writings and used them in her acclaimed novel *The Girls.*  In a transparent

17 effort to avoid any comparison of the actual respective works – which readily exposes no

18 similarity in protectable expression – Reetz-Laiolo argues that this inquiry should be reserved for a

19 later stage, or should be given little weight.  Disregarding controlling Ninth Circuit law, he even

20 argues substantial similarity between the works at issue is not required to state a copyright claim.

21 But the law is clear.  On this motion to dismiss the Court must compare the works at issue, which

22 are properly before it.  After stripping the works of their abstract ideas and stock elements, only

23 one reasonable conclusion can be reached:  the works are dramatically different, not substantially

24 similar.  Reetz-Laiolo's copyright and related claims must therefore be dismissed.

25     Plaintiffs' claims based on allegations of computer intrusions should also be dismissed.

26 While Plaintiffs have thrown a grab-bag of federal and state law claims against the wall, not a

27 single claim sticks.  When their conclusory assertions are removed, the remaining *factual*

28 allegations do not plausibly state a claim under any of their theories.

**ARGUMENT**

**I.     REETZ-LAIOLO'S COPYRIGHT CLAIMS SHOULD BE DISMISSED**

Reetz-Laiolo attempts to evade dismissal of his copyright claims by invoking plainly erroneous legal standards before falling back on charts identifying highly generic or abstract "similarities," that are often false or misleading.  What he fails to do is make a plausible case that any reasonable jury could find that Cline's novel *The Girls* appropriates protectable expression from Reetz-Laiolo's screenplay *All Sea*.   No allegations of supposed access or misleading charts can change the inevitable conclusion that follows from a reading of the works at issue here:  *The Girls* is not substantially similar in *protectable expression* to either version of *All Sea*.  Reetz-Laiolo's copyright claims should therefore be dismissed with prejudice.

**A.     Reetz-Laiolo is Required to Plausibly Allege Substantial Similarity of Protected Expression, and Because He Cannot, His Claims Must Be Dismissed**

Seeking to avoid the necessary comparison of the actual works – which dooms his claims – Reetz-Laiolo raises a series of arguments regarding the applicable legal standards, which together reveal a fundamental lack of understanding of basic copyright principles.  <u>First</u>, he argues that any inquiry can stop after a showing of "copying" and that he need not demonstrate substantial similarity to state a claim.  Opp. at 25.  He is in error.  Substantial similarity is an essential element of a copyright claim, because without it a plaintiff cannot show that any alleged copying amounted to unlawful appropriation.  As the Ninth Circuit recently clarified:

> Although our cases have not always made this point explicit, the [copying] element has two distinct components: "copying" and "unlawful appropriation." . . .  Proof of unlawful appropriation – that is, *illicit* copying – is necessary because copyright law does not forbid all copying. . . . [A] defendant incurs no liability if he copies only the "ideas" or "concepts" used in the plaintiff's work.  To infringe, the defendant must also copy enough of the plaintiff's expression of those ideas or concepts to render the two works "substantially similar."

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018) (emphasis in original) (internal citations omitted).  Reetz-Laiolo confuses the showing of substantial similarity required to create a presumption that the plaintiff's work was *copied*, and that required to show that any copying that may have occurred constituted *unlawful appropriation*.  Put simply, there is no "full stop" after

DAVIS WRIGHT TREMAINE LLP

allegations that a work was copied, as Plaintiff suggests; he must still plausibly plead substantial similarity of protected expression – i.e. unlawful copying – for his claim to survive.[1]  *See Narell*, 872 F.2d at 910-12 (holding it irrelevant that defendant admitted to copying from plaintiff's book since the takings amounted to "unprotected factual information" and "ordinary phrases").

Next, Reetz-Laiolo suggests that Defendants' failure to mention the "inverse ratio rule" acts as a "tacit admission" that it is "fatal" to this motion."  Opp. at 29.  Yet this omission is for good reason – the rule has nothing to do with this motion.  "[The inverse ratio] rule . . . assists only in proving copying, not in proving unlawful appropriation."  *Rentmeester*, 883 F.3d at 1124. While Defendants strenuously deny *any* access to the *All Sea* drafts at issue, they assume *solely* for purpose of this motion that it occurred.  Thus, the only issue on this motion is whether the alleged copying amounts to unlawful appropriation.  And "[t]he showing of substantial similarity necessary to prove unlawful appropriation does not vary with the degree of access the plaintiff has shown."  *Id.  See also Shaw v. Lindheim*, 919 F.2d 1353, 1361 (9th Cir. 1990) ("No amount of proof of access will suffice to show copying if there are no similarities.") (citation and quotation marks omitted).

Finally, contrary to Reetz-Laiolo's arguments, it is beyond question in this jurisdiction that where the works at issue are before the court, and a review of them demonstrates that no reasonable jury could find substantial similarity, a court can and should dismiss copyright claims on a pre-discovery motion.  *See Rentmeester*, 883 F.3d at 1123, 1128 (rejecting the argument that dismissal at the pleading stage is "rarely appropriate," noting that "[n]othing disclosed during discovery could alter the fact that the allegedly infringing works are as a matter of law not substantially similar"); *Capcom Co. v. MKR Grp., Inc.*, No. C 08-0904 RS, 2008 WL 4661479, at

---

[1] The cases Reetz-Laiolo relies on for this misguided view underscore that substantial similarity of protected expression is presumptively required in order to state a claim. "A finding that a defendant copied a plaintiff's work, without application of a substantial similarity analysis, has been made ***only*** when the defendant has engaged in virtual duplication of a plaintiff's entire work." *Narell v. Freeman*, 872 F.2d 907, 910-12 (9th Cir. 1989) (emphasis added). *See also Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012) (substantial similarity analysis unnecessary where plaintiff had offered evidence of the unauthorized public performance of complete copyrighted song compositions and musical tracks); *Fodor v. Los Angeles Unified Sch. Dist.*, No. CV 12-8090 DMG (CWX), 2014 WL 12235424, at *11 (C.D. Cal. June 3, 2014) (defendant distributed "virtually identical copies" of complete sections of plaintiff's work). Here there is no allegation of "virtual duplication," nor could there be.

DAVIS WRIGHT TREMAINE LLP

*4-5 (N.D. Cal. Oct. 20, 2008) (rejecting plaintiff's "argu[ment] that the question of substantial similarity may not properly be resolved on a motion to dismiss under FRCP 12(b)(6)").[2]  The law is clear that this Court can and should dismiss Reetz-Laiolo's copyright claims at this stage.

**B.    *The Girls* and *All Sea* Are Not Substantially Similar**

When Reetz-Laiolo's finally turns to the substantial similarity analysis, he makes no attempt to identify specific, "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works," as required under the extrinsic test for substantial similarity.  *Funky Films v. Time Warner Entm't Co*, 462 F.2d 1072, 1077 (9th Cir. 2006).  Instead, he relies on charts of highly generic, and/or manufactured "commonalities," which draw indiscriminately from one or the other of the two drafts of *All Sea* at issue (since neither work contains all, or even a large majority, of the similarities alleged).  *See* Opp. 31-37.  Federal courts recognize that "such lists are 'inherently subjective and unreliable,' particularly where," as here, "'the list emphasizes random similarities scattered throughout the works.'"  *Williams v. Crichton*, 84 F.3d 581, 590 (2d Cir. 1996) (citations omitted).  Moreover, these charts consist entirely of generalized abstractions, painstakingly phrased to tease out some generic common word or idea, while omitting a gulf of distinguishing context and detail.[3]  But Reetz-

---

[2] *See also White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 476 (9th Cir. 2014) (affirming dismissal despite "over 100 similarities" alleged between the works at issue, since their protectable elements were not similar); *Basile v. Warner Bros. Entm't Inc.*, 678 F. App'x 604, 604 (9th Cir. 2017) (affirming dismissal for lack of substantial similarity "between protected elements"); *Wild v. NBC Universal*, 513 F. App'x 640 (9th Cir. 2013) (same); *Heusey v. Emmerich*, 692 F. App'x 928, 929 (9th Cir. 2017) (same); *Identity Arts v. Best Buy Enter. Servs. Inc.,* No. C 05-4656 PJH, 2007 WL 1149155, at *18 (N.D. Cal. Apr. 18, 2007), *aff'd sub nom.* 320 F. App'x 772 (9th Cir. 2009) (judgment on the pleadings for lack of substantial similarity).  The cases Reetz-Laiolo cites are consistent with this well-established principal:  *See Cabell v. Zorro Prods. Inc.*, No. 5:15-CV-00771-EJD, 2017 WL 2335597, at *8 (N.D. Cal. May 30, 2017) (court could not decide substantial similarity on a motion to dismiss because "neither party has attached copies of the works at issue for the court to consider"); *Betty, Inc. v. PepsiCo, Inc.*, 22017 WL 4311037, at *10 (S.D.N.Y. Sept. 26, 2017) ("[w]hen called upon to consider whether two works are substantially similar . . . what is required is only a visual comparison of the works").

[3] For example, considerable energy is spent suggesting there is a "similarity" between *The Girls*' scene of Evie sitting in a chair in her living room reading a *McCall's* (with "[i]ts genitally slick hams, wreathed in pineapple," Everdell Decl. Ex. A at 228) and the scene in the June 2013 version of *All Sea* of Gabe lying in bed holding up a *Club* porn magazine ("so the centerfold is open.  It is lurid; she has no pubic hair," Ex. 6 at 6), claiming that both illustrate "the teenage protagonist's sense of isolation, comfort, and their evolving fascination with sexuality."  Opp. at 25, 32.  Critical context proves otherwise:  In *The Girls*, the cited scene occurs late in the novel, after Evie's virginity is bargained away to the musician Mitch by Russell, aided by Suzanne.  Evie has retreated to her mother's highly appointed living room, another world from the ranch, because she

---

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1   Laiolo "cannot claim an exclusive right to ideas or concepts at that level of generality, even in

2   combination." *Rentmeester*, 883 F.3d at 1123.  *See also Silas v. Home Box Office, Inc.*, 201 F.

3   Supp. 3d 1158, 1173 (C.D. Cal. 2016), *aff'd*, No. 16-56215, 2018 WL 1018332 (9th Cir. Feb. 22,

4   2018) (finding that while there were "generic similarities between" the works at issue, "there

5   [were] no similarities between the actual objective details of the works," and dismissing).  Even

6   the most charitable reading of the various purported similarities, when compared with the actual

7   works, reveals that they are stock elements, *scènes à faire*, broad ideas, and/or blatant

8   mischaracterizations.[4]  Indeed, any similarity dissolves when one actually reads and compares the

9   works.  For instance, the two protagonists are dramatically different in their protectable aspects,

10   *see* Motion at 18-19, and the fact that they are both thirteen or fourteen, or live in a town

11   somewhere in the northern part of California (Gabe lives in southern California in the earlier draft,

12   *see* Ex. 6 at 1), does not change that conclusion.  *See* Opp. at 32.  In the end, the two works are

13   substantially different in every critical element, and Reetz-Laiolo's abstract and imagined

14   "similarities" amount to nothing at all.  *See* Mot. at 9-21; *Silas*, 201 F. Supp. 3d. at 1171-72.

15       Reetz-Laiolo all but concedes that the respective works are not substantially similar in any

16   protectable elements.  Over and over he refers to "tell-tale traces" of his work in *The Girls*, or

17   claims that his work was an "indirect inspiration."  Opp. at 25.  Reetz-Laiolo then tellingly and

18   extensively invokes *Metcalf v. Bochco*, in which the Ninth Circuit held that the "[t]he particular

19   sequence in which an author strings a significant number of unprotectable elements can itself be a

---

20   has been deeply wounded.  She sees the hams in her mother's *McCall*'s as "genitally slick"

21   because now even the most banal items are colored by the sexual trauma she suffered.  By stark
contrast, at the beginning of *All Sea* Gabe lies in his bed in a largely empty apartment, looking at a

22   porn magazine.  The *Club* magazine centerfold is described as "lurid" as because it is literal
graphic pornography – a far cry from a picture of ham imbued with uncomfortable sexuality.  It

23   strains credulity to argue these scenes are similar in their protectable elements.

24   [4] For example, Reetz-Laiolo argues *The Girls* and *All Sea* are similar because "[a] young woman
in each narrative lives and works for the father figure."  Opp. at 36.  In *All Sea* a young woman,

25   Anna/Cassie, lives with Ray, Gabe's uncle, and works on his ranch, though they are not
romantically involved.  But in *The Girls*, the woman who lives with Evie's father in his Palo Alto

26   apartment is his *girlfriend Tamar*, for whom he left Evie's mother.  In another instance, the chart
claims that during Gabe's burglary at the outset of *All Sea* and Evie's "creepy crawling" near the

27   end of *The Girls*, "[n]either teen actually attempts to steal or take anything of value."  Opp. at 4.
This is true of Evie, but in the June 2013 draft of *All Sea*, Gabe breaks into a stranger's house *to*

28   *steal liquor*, and *takes several bottles* before he is caught.  Ex. 6 at 9 ("Gabe in kitchen . . .  slips
[bottles of alcohol] into socks and hoists the three of them to go.").  In the later draft he steals from
a liquor store.  Ex. 7 at 12.

DAVIS WRIGHT TREMAINE LLP

protectable element," 294 F.3d 1069, 1074 (9th Cir. 2002), in attempt to claim that these alleged "traces" of *All Sea* in *The Girls* can still give rise to a claim.  Opp. at 25.  But Reetz-Laiolo's claims fall far short of the onerous standard set by *Metcalf*, in which "Defendant's screenplay had the same setting in the same location and city as plaintiff's, dealt with identical issues, had similar looking characters in identical professions, facing the identical challenges.  The sequence of events and happenings in both works was identical, complete with the presence of similar outside characters." *Identity Arts*, 2007 WL 1149155, at *27 (distinguishing *Metcalf* and granting judgment on the pleadings for lack of substantial similarity).  Because of these unique circumstances, "[m]any courts have been reluctant to expand this concept beyond the clear-cut case presented in *Metcalf*," *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1138 (C.D. Cal. 2007) (citing cases).  Here, the works at issue do not even begin to display "identical" characters, relationships, plot points, and sequences of events – and indeed these larger elements are exactly what *distinguish The Girls* from *All Sea*.  *Metcalf* serves only to underscore how infirm Reetz-Laiolo's copyright claims truly are.

A point-by-point dissection of Reetz-Laiolo's misleading charts is ultimately unnecessary. The relevant portions of the works at issue here are brief, and the Court need only review them to debunk Reetz-Laiolo's claims.[5]  *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 51 (2d Cir. 1986) ("the works themselves, not descriptions or impressions of them, are the real test for claims of infringement").  Read in context, the single scene and two dialogue exchanges at issue are minor portions of what are, on the whole, dramatically different works, on both their thematic and granular levels.  *See* Mot. at 4-7, 12-20.  *The Girls* examines the dangerous extremes of adolescent girlhood and male abuse in the 1960s and now, in the context of a retelling of the Manson Family murders.  *All Sea* does none of these things.  It is a coming-of-age story with a boy protagonist, set in rural Oregon.  It involves no historical setting, no murders, no Manson Family-like cults, and no defining female friendships (indeed, there appear to be no female friendships in the story whatsoever).  Any similarities between *All Sea* and *The Girls* are purely generic and unprotectable,

---

[5] *Compare* AC, Ex. 6 (June 2013 Draft of *All Sea*) at 6-14, 25-27 and Ex. 7 (December 2013 Draft of *All Sea*) at 5-16, 20-21, *with* Ex. 3 (Cline's Draft) at 195-215, 227-231; Everdell Decl., Ex. A (*The Girls*) at 228-251; 267-272.

and the defining elements of the works are utterly distinct.  No reasonable jury could find

substantial similarity, and Reetz-Laiolo's copyright claims should be dismissed with prejudice.[6]

## II.   REETZ-LAIOLO'S CONVERSION AND CIVIL THEFT CLAIMS FAIL

Reetz-Laiolo's conversion and civil theft claims are preempted as "not qualitatively

different from [his] copyright claim" because "[t]he essence of [his claims] is derived from

defendants alleged unauthorized use of a copyrighted work."  *Motown Record Corp. v. George A.*

*Hormel & Co.*, 657 F. Supp. 1236, 1240 (C.D. Cal. 1987).   In opposition he does not dispute this,

but instead cites to cases having nothing to do with this action, where a defendant interfered with a

plaintiff's tangible property right in the item at issue.  *See Oddo v. Ries*, 743 F.2d 630, 635 (9th

Cir. 1984) (concerning "[c]onversion of tangible property" in the form of a paper manuscript);

*Gladstone v. Hillel*, 203 Cal. App. 3d 977, 989, 250 Cal. Rptr. 372 (Ct. App. 1988) (conversion of

the physical molds used to create decorative jewelry).  Here, Reetz-Laiolo's claims are concerned

with the alleged incorporation of his *intellectual property* into *The Girls*, *see* AC ¶¶ 305, 319

(alleging conversion and civil theft via "incorporating the content of his draft manuscripts, email

communications, and ideas into manuscripts of [Cline's] book").  Regardless, Reetz-Laiolo fails to

explain or justify his failure to plead damages – an essential element of both claims.  Mot. at 21-

22.  The conversion and civil theft claims may be dismissed for this independent reason as well.

## III.   PLAINTIFFS HAVE NOT STATED A CLAIM UNDER THE SCA

### A.   Plaintiffs Have Not Alleged that Their Emails Were in "Electronic Storage"

As explained in Defendants' Motion, the Amended Complaint does not allege that the

emails allegedly accessed by Cline were in "electronic storage" within the very specific meanings

---

[6] Reetz-Laiolo's new "intermediate copying" theory is a cynical attempt to escape early disposition via a theory of infringement he *admits* would ultimately fail on fair use grounds.  *See* Opp. at 37-38 (relying on a case that "the Ninth Circuit reversed on the ground that the doctrine of 'fair use' protected defendant's" intermediate copying of plaintiff's work).  Further, he cannot raise this new theory now.  The Amended Complaint brings copyright claims based on the alleged incorporation of portions of *All Sea* into *The Girls*, *not* based on "intermediate copying" of Reetz-Laiolo's screenplays.  *See* AC ¶¶ 289-300.  "When ruling on a motion to dismiss, the . . . Court may not consider new allegations and arguments raised in the opposition brief."  *Winn v. Lassen Canyon Nursery Inc.*, No. 2:10-CV-1030-JAM-CMK, 2010 WL 4688798, at *2 (E.D. Cal. Nov. 10, 2010).  *See also Schneider v. Cal. Dep't of Corrections*, 151 F. 3d 1194, 1197 n.1 (9th Cir. 1998) (in ruling on a Rule 12(b)(6) motion, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion.").

DAVIS WRIGHT TREMAINE LLP

of the SCA:  "(A) any temporary, intermediate storage of a[n]…electronic communication incidental to the electronic transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication."  18 U.S.C. § 2501(17).  As numerous courts have held, subsection (A) is limited to "messages not yet delivered to their intended recipient."  *Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004) (citing cases).  *See also Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 983 (C.D. Cal. 2010); *United States v. Weaver*, 636 F. Supp. 2d 769, 771 (C.D. Ill. 2009).  This stands to reason, since the indefinite storage of an already-delivered message would not be "temporary," "intermediate," or "incidental to the electronic transmission" of that storage.  Plaintiffs question whether the Ninth Circuit actually reached this holding in *Theofel*, Opp. at 7, but the district court in *Crispin* plainly found it did.  *See* 717 F. Supp. 2d at 983 ("The Ninth Circuit agrees that 'subsection (A) applies only to messages in "temporary, intermediate storage,"' and has 'limited that subsection's coverage to messages not yet delivered to their intended recipient.'") (quoting *Theofel*, 359 F.3d at 1075).  Plaintiffs do not cite a single case that has held to the contrary.

Plaintiffs then insist that their pleadings satisfy subsection (A) because they allege that Cline "accessed their unopened emails."  Opp. at 7.  But the Amended Complaint says no such thing, alleging only that *Cline* accessed "previews" of Plaintiffs' emails without opening them herself.  It does *not* allege that the "previewed" emails had not yet been opened.  AC ¶¶ 109-112.  *See also* Opp. at 7 ("Cline accessed 'previews' of Plaintiffs' emails without opening them").

As is clear from the statute's plain language, subsection (B) of the SCA's definition of "electronic storage" is limited to copies of emails that serve as "backup protection" to some other, original version of the email.  *See* Mot. at 23.  In the case of web-based email services such as Gmail and Yahoo, the emails held by the email service providers do not function as backups since those are typically the only versions of the email that the user has.  *Id.*  Nothing in the Amended Complaint plausibly suggests that the emails allegedly accessed by Cline in Plaintiffs' web-based email accounts served as backups to other versions of the emails.  And in their Opposition, Plaintiffs make no attempt to explain how web-based emails could serve as backups when no other copies of the emails exist.  Instead, they resort to a gross mischaracterization of the case law.

DAVIS WRIGHT TREMAINE LLP

Thus, Plaintiffs assert that *Theofel* holds that that *any* emails stored on the server of an internet service provider (ISP) following delivery are necessarily stored for backup purposes. Opp. at 8. But *Theofel* actually says the opposite. *See* 359 F.3d at 1070, 1077 (where email provider is "the only place a user stores his messages . . . the messages are not stored for backup purposes"). Moreover, unlike this case, *Theofel* involved non-web-based email; the ISP there kept "a second copy of the message in the event that the user needs to downloaded it again – if, for example, the message is accidentally erased from the user's own computer." 359 F.3d at 1075. There, the ISP's copy was clearly serving a backup function, but in this case, which concerns web-based email, the email held by the provider is the sole copy. A webmail user does not typically download another copy onto his or her own computer, and Plaintiffs have not alleged that they did so. Here, the email on the ISP's server is not serving a backup protection function since there is no other version of the email that is being backed up. *See Weaver*, 636 F. Supp. 2d at 772 (noting that since "[*Theofel*] relies on the assumption that users download emails from an ISP's server to their own computers," it is "largely inapplicable" to web-based email).

The other cases cited by Plaintiffs do not address this issue at all. *Hahn v. Rothman*, No. 09-cv-0249 ODW (FFM), 2010 WL 11507395 (C.D. Cal. Oct. 8, 2010), involved a factual dispute over whether the defendant could even be said to have accessed the plaintiffs' email accounts, since he reviewed paper print-outs of the emails provided by a third party, and the issue of whether the emails were held for "backup protection" was never raised or considered by the court. Similarly, *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892 (9th Cir. 2008), *rev'd on different grounds sub nom. City of Ontario, Cal. v. Quon*, 560 U.S. 746 (2010), did not involve email at all (let alone web-based email) but involved text messages, copies of which were kept by the service provider as backups of messages delivered to the user's device. *Id*. at 902. In *Bailey v. Bailey*, No. 07-CV-11672, 2008 WL 324156 (E.D. Mich. Feb. 6, 2008), the court also did not address the issue raised here, as the defendant had made a very different argument, "conflat[ing] the two meanings of 'electronic storage' in the SCA" and claiming that the Act did not apply to communications already transmitted to their intended recipient, regardless of whether they were backup copies. *Id*. at *5-6. And while *Doe v. City & County of San Francisco*, No. C10-04700

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1  TEH, 2012 WL 2132398 (N.D. Cal. June 12, 2012), did involve web-based email, the defendant

2  did not raise, and the court did not consider, whether the emails were held for backup protection

3  purposes; the defendant only contested the question of *access*.[7]

4       As Defendants' Motion showed, courts that actually *have* addressed the question of

5  whether emails stored on a web-mail provider's server are stored for purposes of backup

6  protection have uniformly held that they are *not*, at least in the absence of an allegation that the

7  email user made a copy of the emails (an allegation Plaintiffs have not made).  *See* Mot. at 23.

8  Unsurprisingly, Plaintiffs ignore these cases.  But because they address the actual question at

9  hand, and are consistent with *Theofel*, their reasoning should govern here.  *See id*. at 23-24.

10      Finally, Plaintiffs appear to suggest that whether the emails allegedly accessed by Cline

11 were stored for backup purposes is a factual question unsuitable for resolution on a motion to

12 dismiss.  Opp. at 9.  This might be the case if Plaintiffs had made any plausible allegations

13 supporting an inference that the emails were stored for backup protection.  But the Amended

14 Complaint contains no allegation suggesting that Plaintiffs made copies of the emails at issue, or

15 that the emails stored by their email providers served in some other way as backup protection.

16 The only plausible inference, then, is that Plaintiffs operated like almost all other web-based email

17 users – using the webmail provider to store the sole copy of each email.  Plaintiffs' SCA claim

18 should therefore be dismissed.  *See Anzaldua v. Ne. Ambulance & Fire Prot. Dist*., 793 F.3d 822,

19 839 (8th Cir. 2015) ("Even if Anzaldua sufficiently alleged unauthorized access . . . the SCA also

20 required him to allege that the emails were in 'electronic storage.'  This he failed to do.").[8]

21

22 [7] *See also Underhill v. Kornblum*, No. 16-cv-1598-AJB-WVG, 2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) (analyzing only whether to issue default judgment, since defendant had not responded to complaint); *Band Pro Film & Digital, Inc. v. ARRI, Inc.*, No. 12-cv-03226-CJC (AN), 2012 WL 23 12888099, at *5 (C.D. Cal. Oct. 10, 2012) (limiting analysis to whether plaintiff company was a provider of electronic communication services and not addressing "electronic storage" issue).

24 [8] As set out in Defendants' Motion, the Ninth Circuit in *Theofel* recognized that when an email service retains emails but they do not fall within the definition of "electronic storage," the email 25 service would be operating as a "remote computing service" (RCS) under the SCA, not as an "electronic communication service" (ECS).  Mot. at 24 n.12.  Plaintiffs appear to argue, 26 notwithstanding *Theofel*, that an email service *always* operates as an RCS.  Opp. at 9 n.2.  This is incorrect.  The same entity can be an ECS, an RCS, or both, depending on what function it serves 27 with respect to the particular emails in question.  Here, since the webmail accounts at issue stored emails that were not in "electronic storage" within the meaning of the SCA, those providers were 28 serving as RCSs, and the underlying emails were not subject to the protection of Section 2701 of the SCA (though they are protected by other provisions not at issue here).  *See Crispin*, 717 F.

DAVIS WRIGHT TREMAINE LLP

### B. Plaintiffs Are Not Entitled to Statutory Damages

Plaintiffs do not dispute that they have not alleged actual damages resulting from Cline's alleged violations of the SCA, yet they insist that they are entitled to "a minimum of $1,000 in statutory damages per violation." Opp. at 9. The Ninth Circuit has not addressed whether a plaintiff must prove actual damages to be entitled to statutory damages under the SCA. But, as noted in Defendants' Motion, the only circuit courts that have addressed this issue, as well as numerous district courts, have held that actual damages *are* required, relying on the Supreme Court's reasoning in *Doe v. Chao*, 540 U.S. 614 (2004), regarding a "substantially identical" provision in the Privacy Act. Rather than address the careful reasoning of those decisions and attempt to explain how they could be wrong, Plaintiffs contend that this Court should follow the contrary result reached by a few district courts within the Ninth Circuit. Opp. at 10-11. The decisions Plaintiffs cite are not binding on this Court, and their limited analysis does not stand up to the thorough and compelling reasoning of two Federal Courts of Appeals in *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 965 (11th Cir. 2016) and *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 204-05 (4th Cir. 2009). *See* Mot. at 24-26.[9] In contrast to Plaintiffs' position, Defendants' position is supported by the decisions of two circuit courts and at least three district courts, as well as a Supreme Court decision involving a statute with "substantially identical" language to the

---

Supp. 2d at 987. The situation here is part of the scheme Congress intentionally created, which provides different protections to different categories of stored emails.

[9] Nor do the district court cases cited constitute a long, "unbroken line of authority" on this issue, Opp. at 9-10, as most hardly even touch on the key issue here. In *Gallagher v. United States*, the court merely alluded to the split in the courts on the issue, without deciding the question, and the plaintiff in that case *had* adequately alleged actual damages. No. 17-cv-00586-MEJ, 2017 WL 4390172, at *11 & n.4 (N.D. Cal. Oct. 3, 2017). *Matera v. Google Inc.* did not involve an SCA claim at all. No. 15-cv-04062-LHK, 2016 WL 5339806(N.D. Cal. Sept. 23, 2016). *Gaos v. Google Inc.* involved an SCA claim, but the court addressed only the issue of whether plaintiffs had Article III standing; the court did not address the availability of statutory damages, or whether a claim was stated. No. 5:10-cv-4809 EJD, 2012 WL 1094646, at *3 & n.4 (N.D. Cal. Mar. 29, 2012). *See also Wyatt Tech. Corp. v. Smithson*, 345 F. App'x 236, 239 (9th Cir. 2009) (vacating an award of punitive damages but not compensatory damages, and not considering whether statutory damages could be awarded in the absence of actual damages); *Chavan v. Cohen*, No. C13-01823 RSM, 2015 WL 4077323, at *4 (W.D. Wash. July 6, 2015) (citing *In re Hawaiian Airlines* in dictum, without any analysis, and in the context of deciding a default judgment – i.e. with no benefit of adversarial argument). The only three cases cited by Plaintiffs that properly address the statutory damages question at issue, *Aguiar v. MySpace LLC*, 2017 WL 1856229 (C.D. Cal. May 5, 2017), *In re Hawaiian Airlines Inc.*, 355 B.R. 225 (D. Haw. 2006), and *Hahn v. Rothman*, 2010 WL 11507395 (C.D. Cal. Oct. 8, 2010), were addressed in Defendant's Motion, *see* Mot. at 26 n.13, and Plaintiffs offer no response.

---

1   SCA.  The weight of authority, then, heavily favors Defendants.

2   **IV.   PLAINTIFFS' WIRETAP ACT CLAIM FAILS BECAUSE THEY HAVE NOT ALLEGED INTERCEPTION OF COMMUNICATIONS IN TRANSMISSION**

3

4           Plaintiffs attempt to give life to their Wiretap Claim by repeating, conclusorily, that the

5   Refog program running on Cline's computer captured communications in transmission.  But the

6   non-conclusory *factual* allegations in the Complaint do not plausibly support this conclusion.

7   Plaintiffs' argument rests entirely on their allegation that the Refog software captured "periodic

8   snapshots" of information displayed on the computer's screen.  AC ¶ 54.  They claim that since

9   some of these screenshots were allegedly taken of communications shortly *before* they were sent,

10  or shortly *after* they were received, those communications were "intercepted."  Opp. at 11-12.[10]

11  This argument flies in the face of the Ninth Circuit's clear holding that an electronic

12  communication is "intercepted" only if it is captured *during* transmission from one computer to

13  another, not shortly before or shortly after.  *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868,

14  878 (9th Cir. 2002).[11]  A screenshot by definition captures information that is at rest on the

15  computer screen – *not* information that is in transit between one computer and another.

16          Plaintiffs' reliance on *Shefts v. Petrakis* is unavailing.  There, the court found that a

17  program installed on the plaintiff's computer, which transmitted simultaneous records of computer

18  activity to the defendants' separate "monitoring station," intercepted plaintiffs' messages because

19  "any emails sent by Plaintiff on his Yahoo! account via his desktop computer would have been

20  captured by SpectorPro *as they were being transmitted* to Yahoo! via the Internet."  No. 10-cv-

21  1104, 2012 WL 4049484, at *9 (C.D. Ill. Sept. 13, 2012) (emphasis in original).  In contrast, the

22  Refog software on *Cline's computer* "captured periodic snapshots of the computer's screen" – i.e.,

23  it took snapshots *prior to* or *after* a message was transmitted, not in the midst of transmission (and

24  it did not transmit those snapshots to a "monitoring station").  AC ¶ 54.[12]

25  ─────────────────────

26  [10] Plaintiffs concede that the software's logging of keystrokes does not constitute an interception since keylogging "merely 'capture[s] signals between the keyboard and the computer.'"  Opp. at 12 (citation omitted).

27  [11] *See also Theofel*, 359 F.3d at 1077; *United States v. Barrington*, 648 F.3d 1178, 1202 (11th Cir. 2011); *Hernandez v. Path, Inc.*, No. 12-CV-01515 YGR, 2012 WL 5194120, at *3 (N.D. Cal. Oct.

28  19, 2012); *United States v. Ropp*, 347 F. Supp. 2d 831, 838 (C.D. Cal. 2004).

    [12] Plaintiffs cite only two other cases, but neither helps them.  In *Brahmana v. Lembo*, the court

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1    Even if *Shefts* could be interpreted as holding that any capturing of screenshots of email

2    messages could be an interception, that interpretation would be inconsistent with the vast majority

3    of courts that have examined this issue, including federal circuit courts and Ninth Circuit district

4    courts.  These decisions make clear that an interception occurs only if a communication is stopped

5    *during* transmission from one computer to another and then recorded or redirected.  As the

6    Eleventh Circuit explained in adopting the Ninth Circuit's reasoning in *Konop*, 302 F.3d at 874:

7        "[T]here is only a narrow window during which an E-mail
         interception may occur—the seconds or mili-seconds [sic] before
8        which a newly composed message is saved to any temporary
         location following a send command. Therefore, unless some type of
9        automatic routing software is used (for example, a duplicate of all of
         an employee's messages are automatically sent to the employee's
10       boss), interception of E-mail within the prohibition of the Wiretap
         Act is virtually impossible."

11   *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003) (citation omitted).[13]  No factual

12   allegation in the Amended Complaint even remotely suggests that the Refog software halted

13   emails or other communications in transit, as opposed to simply periodically copying information

14   at rest on the laptop's screen.[14]

15       In a last ditch effort to keep this claim alive, Plaintiffs argue – as always – that "when and

16   how" any interception happened is a factual question inappropriate for resolution on a motion to

17
_____

18   addressed only the question whether keystrokes captured by a network analyzer "affected
     interstate commerce," not whether they were intercepted in transmission.  No. C-09-00106 RMW,
19   2009 WL 1424438, at *3 (N.D. Cal. May 20, 2009).  In *Arrington v. Colortyme, Inc.*, the court let
     the claim proceed "regardless of whether the screenshots, keystrokes, and webcam photographs
20   were in transmission" when they were accessed.  972 F. Supp. 2d 733, 747 (W.D. Pa. 2013).  To
     the extent *Arrington* suggested communications could be "intercepted" even if they were not
21   captured in transmission, it is contrary to the rule established by the Ninth Circuit in *Konop*.
     [13] *See also NovelPoster v. Javitch Canfield Grp.* 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014) ("for a
22   Wiretap Act violation to occur, the defendants' actions must 'halt the transmission of the messages
     to their intended recipients.'") (quoting *Exec. Sec. Mgmt., Inc. v. Dahl*, 830 F. Supp. 2d 883, 904
23   (C.D. Cal. 2011)); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1154 (C.D. Cal.
     2007) ("The Ninth Circuit's interpretation of the word 'intercept' also comports with the ordinary
24   meaning of the word, which is 'to stop, seize, or interrupt in progress or course before arrival.'")
     (quoting *Konop*, 302 F.3d at 878; *Global Policy Partners, LLC v. Yessin*, 686 F. Supp. 2d 632,
25   638 (E.D. Va. 2009) ("a qualifying 'intercept' under the [Wiretap Act] . . . can only occur where
     an e-mail communication is accessed at some point between the time the communication is sent
26   and the time it is received by the destination server").

27   [14] Indeed, Plaintiffs' insistence that Kiesel's emails were intercepted even though she never used
     Cline's computer simply underscores the absurdity of their argument.  Opp. at 13 n.5.  Since
28   Kiesel never used the laptop, the *only* way the Refog software could have copied her emails is by
     taking a screenshot of them after they had arrived on Cline's computer and were being viewed by
     Reetz-Laiolo.

_____

dismiss. Opp. at 13-14. But since Plaintiffs have not adequately *alleged* an interception, there is no factual issue to be determined. As a matter of law, the copying of data resting on a laptop's screen does not constitute "interception" since it does not amount to intercepting a communication during transmission from one computer to another.[15]

## V.   PLAINTIFFS FAIL TO STATE A CFAA CLAIM

The Amended Complaint alleges a violation of the Computer Fraud and Abuse Act based *entirely* on Cline's alleged access to the laptop computer that she once owned and then sold to Reetz-Laiolo. AC ¶¶ 247-253. Apparently recognizing the futility of this claim, Plaintiffs now attempt to switch theories, suggesting that Cline violated the CFAA by accessing the computers belonging to Plaintiffs' *email providers*. Opp. at 14-15. But nowhere does the Complaint suggest that this is the basis for the CFAA claim. Such a bait-and-switch tactic is impermissible. *See Winn*, 2010 WL 4688798, at *2; *Schneider*, 151 F. 3d at 1197 n.1. Indeed, even after reviewing Defendants' original motion to dismiss, Plaintiffs did not amend their CFAA claim to assert this new theory that Cline accessed the computers of Plaintiffs' email providers. It is too late to state an entirely distinct theory for the claim, of which Defendants were given no notice. *See Pickern v. Pier 1 Imports (US), Inc.*, 457 F. 3d 963, 968 (9th Cir. 2006) ("Federal Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'") (citation omitted).

Even if Plaintiffs could base their CFAA claim on a completely new theory advanced for the first time in their opposition brief – and they cannot – that claim still fails for several reasons. First, the *loss* that Plaintiffs allege in their CFAA claim is tied entirely to the alleged effects of the

---

[15] In *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014), the court let the Wiretap Act claim proceed because the complaint had expressly alleged that Yahoo intercepted and scanned its users' incoming emails *during transit* and before placing them in storage and Yahoo had "not provide[d] the Court with any judicially noticeable information" supporting its argument that "the emails had already reached Yahoo's servers when Yahoo accessed them." *Id.* at 1027-28. *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d, 841 (N.D. Cal. 2014), involved similar allegations that Facebook scanned users' private messages while they were in transit. Neither case involved allegations based on the taking of screenshots. In contrast, the factual allegations in the Complaint *and* the judicially noticeable Refog website quoted in the Complaint both make clear that the Refog software operates by taking periodic screenshots of material resting on the computer's screen. *See* https://www.refog.com/mac-keylogger/screenshots.html. Put simply, there is no plausible factual allegation of interception here.

DAVIS WRIGHT TREMAINE LLP

1   Refog software on Reetz-Laiolo's *laptop*.  AC ¶ 252; Opp. at 16-17.  Plaintiffs' new theory thus

2   creates a fatal disconnect between the new alleged CFAA violation (hacking of their email

3   providers' computers) and the alleged loss (slowed performance of Reetz-Laiolo's laptop).  The

4   alleged violation cannot plausibly be said to have caused the alleged loss, and Plaintiffs have

5   alleged no impairment to the integrity or availability of the remote servers that hosted their email

6   accounts, or to the data in their emails.  *See NovelPoster*, 140 F. Supp. 938 at 949 (rejecting

7   CFAA claim based on unauthorized access to email accounts because "NovelPoster does not plead

8   any 'any impairment to the integrity or availability of data, a program, a system, or information.'")

9   (citation omitted).  Moreover, Plaintiffs do not even attempt to argue that any alleged loss

10  stemming from unauthorized access to their emails exceeds $5,000 in one year, as required by the

11  CFAA.  *See id.*

12      To the extent Plaintiffs' claim relies on the theory that Cline remotely accessed Reetz-

13  Laiolo's computer after she sold it to him, Plaintiffs cannot point to anything in the Amended

14  Complaint that plausibly alleges such remote access.  Opp. at 16.  Plaintiffs allege only that Cline

15  briefly *researched* remote access, and that she was somehow able to obtain manuscripts that

16  Reetz-Laiolo had not provided her.  *Id.*[16]  But this hardly suffices to render the idea of remote

17  access plausible, as opposed to merely possible, especially since Plaintiffs' own Complaint alleges

18  several *other* means by which Cline might allegedly have accessed Reetz-Laiolo's manuscripts.

19  *See* AC¶ 140.[17]

20      Moreover, Plaintiffs have not alleged facts sufficient to plausibly infer that any losses to

21

22  ───────────────

    [16] The only factual allegation offered in support of this theory is the supposed similarity between
23  Cline's novel *The Girls* and these draft screenplays but, as set out above, no such similarities
    exist, thus this theory is utterly conclusory.  *See* Section I, *supra*.

24  [17] Plaintiffs claim Defendants are precluded from citing information on the Refog website showing
    that the keylogger program they allege Cline used did not allow for "remote access."  Opp. at 16.
25  But Plaintiffs quote this same website in their Complaint, making it appropriate for the Court to
    consider the entire website, not just the parts Plaintiffs cherry-pick.  *United States v. Ritchie*, 342
26  F.3d 903, 908 (9th Cir. 2003).  Plaintiffs also suggest that a *different* version of Refog software
    could allow remote access, Opp. at 16, but the Amended Complaint never alleges that Cline
    downloaded that software, only that she researched it.  AC ¶ 138.  The reason for this hole in
27  Plaintiffs' allegations is obvious:  the Refog files in their possession show that Cline never
    downloaded this upgraded software.  Plaintiffs' attempt to insinuate that Cline "may have"
28  downloaded remote access software, without actually alleging it, is too cute by half, and should be
    rejected.

DAVIS WRIGHT TREMAINE LLP

Reetz-Laiolo stemming from the temporary slowing of his laptop amounted to over $5,000, for the reasons stated in Defendants' Motion (at 31-32).  Plaintiffs' reliance on this Court's second decision in *NovelPoster v. Javitch Canfield*, 140 F. Supp. 3d 954 (N.D. Cal. 2014) (*NovelPoster II*),[18] only underscores the inadequacy of their Amended Complaint.  In its first *NovelPoster* decision (*NovelPoster I*), the Court initially dismissed the plaintiff's CFAA claim because it made only "a 'conclusory allegation[] of harm" and was " 'devoid of any specific details from which a factfinder could calculate an amount of loss.'"  140 F. Supp. 938, 949 (citations omitted).  Only after the plaintiff amended the complaint and provided "substantially more detailed" allegations of loss, including specific dollar totals attributable to repair costs and lost revenue, which together amounted to well over $100,000, did this court permit the claim to proceed in *NovelPoster II*.  140 F. Supp. 954, 958.[19]  By contrast, even though they amended their complaint *after* seeing Defendants' Motion, which pointed out the inadequate allegations of loss, Plaintiffs still fail to provide sufficient detail of loss to state a CFAA claim.  Rather, they allege only that the laptop suffered slowed performance for over a month, that this negatively affected Reetz-Laiolo's productivity, and that a computer consultant spent over ten hours repairing the computer.  AC ¶ 252.  Plaintiffs do not even attempt to assign a dollar value to these alleged losses.  Their allegations of loss are more akin to the initial "barebones" allegations that this Court found insufficient in *NovelPoster I* than the detailed allegations that it found adequate in *NovelPoster II*.  Their CFAA claim should be dismissed.

## VI.    PLAINTIFFS' CIPA CLAIM FAILS

Plaintiffs concede that Section 631 of CIPA requires the interception of information in transmission and that the analysis under this Section mirrors that under the Wiretap Act.  Opp. at 18.  For the reasons stated above and in the Motion, Plaintiffs have failed to allege interception.

---

[18] Plaintiffs' citations appear to conflate two separate decisions in *NovelPoster*.  This brief provides the correct citations to the separate decisions.

[19] Those allegations included: "impairment of data" caused by the defendants' "extended period of exclusive control over NovelPoster's online accounts"; the expenditure by each of plaintiffs' two founders of ten hours per week for more than eight months on fixing the computer and data; lost revenue of $13,000 that was "unjustly retained" by the defendants; "unrealized revenues" caused by the shutdown of the plaintiff's website; and "damaged relationships" with wholesalers due to the computer outage.  *Id.* at 959, 962-63.

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1   With regard to Section 632, Plaintiffs do not dispute that under California law, emails and other

2   "Internet-based communications are not 'confidential' within the meaning of Section 632, because

3   such communications can easily be shared by, for instance, the recipient(s) of the

4   communications." *Campbell*, 77 F. Supp. 3d at 849.  But they suggest that this principle is

5   somehow limited to the "scanning" algorithms used by providers such as Gmail and Facebook.

6   Opp. at 18-19.  This argument is flatly inconsistent with the case law under Section 632, which

7   make clear that a person lacks a reasonable expectation of privacy in Internet communications

8   precisely because *the other party* to the communication could easily forward it to others, *not*

9   because communications companies can be expected to scan the communications.  *Campbell,* 77

10  F. Supp. at 849; *see also In re Google Inc*., No. 13-MD-02430-LHK, 2013 WL 5423918, at *23

11  (N.D. Cal. Sept. 26, 2013) (email not confidential under CIPA because "email services are by their

12  very nature recorded on the computer of at least the recipient, who may then easily transmit the

13  communication to anyone else who has access to the internet or print the communications").[20]

14      This Court's decision in *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,

15  214 F. Supp. 3d 808 (N.D. Cal. 2016), and the California Court of Appeal's decision in *Lieberman*

16  *v. KCOP Television, Inc.*, 110 Cal. App. 4th 156 (Cal. Ct. App. 2003), are inapposite, since those

17  cases involved the video- and audiotaping of private, in-person meetings, not emails or other

18  Internet communications.  Nothing in those decisions undermines the uniformly recognized

19  principle that emails and Internet communications are not "confidential" under Section 632.[21]

20

21  _____

    [20] *See also People v. Nakai*, 183 Cal. App. 4th 499, 518 (Cal. Ct. App. 2010) ("it was not
22  reasonable for defendant to expect the communications to be confidential because the
    circumstances reflect that the communications could have easily been shared or viewed by [the
23  recipient and others]"); *People v. Griffitt*, No. E049004, 2010 WL 5006815, at *6 (Cal. Ct. App.
    Dec. 9, 2010) ("Everyone who uses a computer knows that the recipient of e-mails and
24  participants in chat rooms can print the e-mails and chat logs and share them with whoever they
    please, forward them or otherwise send them to others.").
25  [21] Plaintiffs argue that this claim is not time-barred as to Reetz-Laiolo even though he alleges he
    discovered Cline's alleged use of the Refog software no later than 2015 – claiming "it took him
26  years to piece together the full extent of the intrusions."  Opp. at 19.  This argument is unavailing:
    Even assuming that the delayed discovery rule applies, the statute of limitations begins running
27  when the plaintiff suspects or has reason to suspect a factual basis for his claim.  *Grisham v. Philip
    Morris USA, Inc.*, 151 P.3d 1151, 741-42 (Cal. 2007).  Based on his own allegations, Reetz-Laiolo
28  clearly suspected or had reason to suspect a factual basis for his CIPA claim when he discovered
    the existence of the Refog software and the data it captured.

**VII.   PLAINTIFFS CALIFORNIA COMPUTER CRIME LAW FAILS**

To the extent Plaintiffs' California Computer Crime Law (CCCL) claim is based on alleged remote access by Cline to Reetz-Laiolo's computer after she sold it to him, the Complaint does not plausibly allege such access, as discussed above and in the Motion to Dismiss.  Plaintiffs also concede that their CCCL claim cannot be based on any harm to the computer caused while Cline owned it, since she was authorized to access and install software on her own computer. Opp. at 19-20.  What remains of the CCCL claim is based on Cline's alleged access to Plaintiffs' email accounts, but they have not adequately alleged that such access caused any cognizable loss. As with the CFAA claim, Plaintiffs' meager factual allegations of loss are confined to the slowed performance of Reetz-Laiolo's computer caused by the Refog software.  That alleged loss could not have been proximately caused by the alleged CCCL violations (access to email accounts).

Moreover, although the CCCL, unlike the CFAA, does not impose a $5,000 loss minimum, the CCCL still requires that Plaintiffs allege a cognizable loss with sufficient specificity.  This they have failed to do, as discussed above.  *See, e.g.*, *NovelPoster I*, 140 F. Supp. at 951.  In addition, general non-economic losses such as "privacy intrusions" are not cognizable under the CFAA or CCCL, as discussed in the Motion.  *See* Mot. at 31 n.19; *NovelPoster I*, 140 F. Supp. 3d at 938, 951 (CCCL elements do "not differ materially" from CFAA elements).

**VIII.   PLAINTIFFS' CALIFORNIA CONSTITUTION AND INTRUSION UPON SECLUSION CLAIMS FAIL**

Plaintiffs appear to concede that they cannot state a California Constitution or intrusion upon seclusion claim based on Cline's alleged remote access to Reetz-Laiolo's computer or to communications that any Plaintiffs placed on, or engaged in on, the computer when it belonged to Cline, and now limit the claim to Cline's alleged access to their email accounts and Reetz-Laiolo's bank account.  But Plaintiffs fail to adequately allege specific content in specific communications that is sufficiently confidential or sensitive to be protected under California law, as required to state a claim.  Mot. at 36; *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1041.  Plaintiffs argue that they should be relieved of the requirement to specify the confidential or sensitive content because specificity would amount to "disclosing the very substance of the highly sensitive contents of the

DAVIS WRIGHT TREMAINE LLP

communication at issue."  Opp. at 21.  This is not a sufficient reason to ignore California's specificity requirement.  Plaintiffs could easily provide more specificity than broad allusions to the general use the Plaintiffs made of certain email accounts (AC ¶¶ 64, 72), the general nature of the subject matter (*id*. ¶¶ 83, 88, ), or the use of certain search terms (*id*. ¶¶ 97-101, 103-104, 119).

## IX.    REETZ-LAIOLO FAILS TO STATE A TRESPASS TO CHATTELS CLAIM

In the Amended Complaint, Reetz-Laiolo predicated his trespass claim on Cline's alleged "operation" of the Refog software after she sold her computer it to him.  AC ¶ 311.  But, as discussed above, the Complaint does not plausibly allege that Cline actually operated the software after selling him the computer.  In his Opposition, Reetz-Laiolo now predicates this claim on Cline's "installation" of the software.  But Cline installed the software *when she owned the computer*.  AC ¶ 52.  The installation thus could not legally have constituted a trespass since the property belonged to Cline.

Moreover, while a trespass to chattels may arise from an interference with a computer's proper functioning, such a claim may not arise from the unwanted effects of computer software that is performing its intended function.  The Refog software was designed to take periodic screenshots and log keystrokes.  AC ¶ 54.  That the normal operation of this software may have gradually occupied enough of the computer's memory to slow down other functions cannot be said to be a "trespass," since it did "not affect [Reetz-Laiolo's] possessory interest in the equipment."  *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1359, 71 P.3d 296 (2003) ("Reading an e-mail transmitted to equipment designed to receive it, in and of itself, does not affect the possessory interest in the equipment.").  In addition, Reetz-Laiolo has failed to allege sufficient "measurable loss" from the Refog software's effect on his computer, as required to state a claim.  *Id.* at 1357 ("an actionable deprivation of use must be for a time so substantial that it is possible to estimate the loss caused thereby," and "[t]hat Hamidi's messages temporarily used some portion of the Intel computers' processors or storage is . . . not enough").  *See also In re iPhone Application Litig.* 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (dismissing trespass claim based on similar allegations, including the loss of "valuable bandwidth and storage space" and the shortening of battery life of their devices, since those allegations did "not plausibly establish a

DAVIS WRIGHT TREMAINE LLP

1   significant reduction in service constituting an interference with the intended functioning of the

2   system.")[22]

3   **X.     REETZ-LAIOLO'S EMOTIONAL DISTRESS CLAIM FAILS BECAUSE HE**
        **DOES NOT ALLEGE INTENT, RECKLESSNESS, OR EMOTIONAL DISTRESS**

4

5               Reetz-Laiolo argues that Cline must have acted at least with reckless disregard that her

6   alleged actions would cause him emotional distress because "she knew that . . . she would almost

7   surely be discovered eventually."  Opp. at 22.  Yet, he does not cite a single allegation in the

8   Amended Complaint to support this assertion, nor can he, because its allegations suggest exactly

9   the opposite.  *See* AC ¶ 62, 73.  Reetz-Laiolo further asserts that giving "little or no thought" to

10  the consequences of one's action in itself constitutes "reckless disregard.  Opp. at 22.  But the

11  cases he cites do not stand for this proposition at all, since the defendants there acted either with

12  intent to cause distress or with knowledge of the likely consequences of their actions, which they

13  disregarded.  *See, e.g.*, *Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1469, 1487-88 (Cal. Ct.

14  App. 1956) (reckless disregard based on a television crew barging into a home without consent to

15  film a dying man as paramedics attempted to assist him, and broadcasting the footage over

16  objections from the man's wife and daughter); *Inland Mediation Bd. v. City of Pomona*, 158 F.

17  Supp. 2d 1120, 1132, 1157-58 (C.D. Cal. 2001) (intent or reckless disregard where defendant,

18  while chairing a property owners' meeting, made racist comments about black renters while

19  "look[ing] directly" at the plaintiff, the only African-American in the room); *cf. Christensen v.*

20  *Superior Court*, 54 Cal. 3d 868, 905 (1991) (dismissing  claim where plaintiffs had not alleged

21  that the defendants' conduct "was calculated to cause them severe emotional distress, or was done

22  with knowledge of … a substantial certainty that they would suffer severe emotional injury.").

23  Finally, the Amended Complaint does not offer any non-conclusory factual allegations indicating

24  the requisite extreme emotional distress.  *See* Mot. at 38.  Reetz-Laiolo insists otherwise, yet

25  cannot cite a single allegation to support his claim.  Opp. at 23.[23]

---

26  [22] Contrary to Reetz-Laiolo's suggestion, *see* Opp. at 22, even if he had stated a claim for trespass,
    he would not be entitled to damages for "emotional distress" caused thereby.  *Intel Corp.*, 30 Cal.

27  4th at 1359 (trespass claim does not permit recovery for "injuries to . . . emotions").

    [23] Reetz-Laiolo appears to concede that his emotional distress claim fails to the extent it is based
28  on alleged misappropriation of his work, and now focuses on Cline's reading of his emails and
    private communications.  Opp. at 23-24 & n.14.

1
2
3

**<u>CONCLUSION</u>**

For the reasons set out above, Defendants respectfully request that Plaintiffs' claims be dismissed with prejudice, and that they be awarded all appropriate attorney's fees and costs.

Dated:  March 26, 2018

Respectfully submitted,
DAVIS WRIGHT TREMAINE LLP

By: */s/ Elizabeth A. McNamara*
Elizabeth A. McNamara (*pro hac vice*)
Abigail B. Everdell (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Phone (212) 489-8230
Fax (212) 489-8340
lizmcnamara@dwt.com
abigaileverdell@dwt.com

Thomas R. Burke
Joy G. Kim
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Phone 415.276.6500
Fax 415.276.6599

Michael A. Vatis (*pro hac vice*)
STEPTOE & JOHNSON LLP
1114 Avenue of the Americas
New York, New York 10036
Phone (212) 506-3927
Fax (212) 506-3950
mvatis@steptoe.com

*Attorneys for Emma Cline and Penguin Random House LLC*

DAVIS WRIGHT TREMAINE LLP